UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ANDY C. OLMEDA                                              CIVIL ACTION

v.                                                          NO. 14-1904

CAMERON INTERNATIONAL                                       SECTION "F"
CORPORATION, ET AL.

ORDER AND REASONS

Before the Court is PMG, Inc.'s Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion is GRANTED in part and DENIED in part.

**Background**

This lawsuit arises from allegations that, after complaining to his employers that he was the target of racial harassment and death threats by white male co-workers and supervisors, the plaintiff, who is of Spanish descent, was fired the day after he complained that the same co-worker and supervisor followed him from work and shot at him while he drove away in his car.

At this stage of the proceedings, the Court takes as true the allegations in the complaint. Andy C. Olmeda was hired in May 2013 to work as a machinist for Cameron International Corporation in St. Mary Parish. PMG, Inc. received a commission for supplying employees like Mr. Olmeda to Cameron. While he worked at Cameron,

1

Mr. Olmeda complained to both Cameron and PMG that he was subject to racial harassment at work. In particular, Mr. Olmeda was perceived as Mexican by some co-workers and supervisors. Two of his co-workers or supervisors, both white males, named Scott Carrington and Billy Perez called Mr. Olmeda a "Beaner" (a derogatory word for someone of Mexican descent) and a "stupid f--king Mexican" and "constantly made gross, outrageous, humiliating racial comments about" Mr. Olmeda. Neither Cameron nor PMG had any anti-discrimination or retaliation policy, or, at least, did not advise or train their employees with respect to any such policy.

In addition to being a target of harassment, Mr. Olmeda also received death threats from Carrington, who while at work drafted and circulated a list entitled "10 Ways to Kill Andy".[1] The death threats escalated in the early morning of September 14, 2013: when Olmeda left work in his car, he was followed in a truck driven by Perez with Carrington riding as passenger; as they drove by, Carrington fired at Olmeda's car with a shotgun, riddling his car with bullets, damaging his car, and causing Olmeda distress.[2] The next day, after Mr. Olmeda reported the incident, his employment

---

[1] This list was "reported to supervisors at Cameron and PMG and nothing was done to investigate or protect" Mr. Olmeda. According to Olmeda, it was well known at work that Carrington was unstable.

[2] Carrington and Perez pled guilty to criminal charges associated with the shooting incident; Olmeda says that they are currently incarcerated.

was terminated, even though he had never received any write-ups or negative performance evaluations.  Cameron and PMG allegedly fired Mr. Olmeda because they did not want him working there and could not protect him.[3]

On February 25, 2014 Mr. Olmeda filed a charge of national origin discrimination and retaliation with the EEOC; he alleged that he complained daily to supervisors and human resources, to no avail, and that, ultimately, Perez and Carrington followed him and shot at him.  He finally writes "I was fired in retaliation."[4]  The EEOC issued Olmeda a right to sue letter on June 11, 2014.

On August 20, 2014 Olmeda sued Cameron International Corporation; PMG, Inc. d/b/a a/k/a Personal Management Group d/b/a PMG; Billy Perez; and Scott Carrington.  Seeking declaratory, injunctive, and monetary relief, Olmeda purports to advance six causes of action, which he describes in the complaint as:

(1) retaliation due to sexual[5] harassment, in violation

---

[3] It is unclear from the complaint precisely when Olmeda was fired; at one point he alleges "[i]mmediately after finding out [Olmeda] filed an EEOC complaint and [Olmeda] again complained of racial discrimination and being shot at, [Olmeda] was terminated by joint employers and common enterprises PMG and Cameron", but Olmeda also alleges that he was fired on September 15, 2013 and that he did not file an EEOC complaint until February 2014.

[4] On February 27, 2014 Mr. Olmeda alleges that he filed another charge with the EEOC (as well as with the Human Rights Commission), this time charging that he was fired in retaliation for complaining about employment discrimination.

[5] Presumably, the reference to "sexual" harassment is a typographical error in the complaint.

> of Title VII and negligent screening, hiring, and supervising; (2) unlawful discriminatory employment practices under Title VII and Louisiana state law; (3) lack of policy for racial harassment, discrimination and retaliation and violence in the workplace in violation of state law; (4) assault and battery [and] intentional infliction [of emotional distress by] Dwight Caton; (5) compensatory and punitive damages under Title VII are allowed; (6) vicarious liability against ... Cameron and PMG ... strictly liable as joint tortfeasors in a common enterprise.

PMG now seeks dismissal of Olmeda's claims.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed.R.Civ.P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Kaiser, 677 F.2d at 1050. Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual allegations." Id. at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

## II.

PMG contends that Olmeda's claims against it must be dismissed for failure to state a claim; in particular, PMG contends that Olmeda fails to plead facts sufficient to support a "common enterprise" theory of liability between PMG and Cameron, and that Olmeda fails to plead facts sufficient to link the alleged conduct of Carrington and Perez to PMG. Olmeda counters that his allegations -- that PMG is an employer of Olmeda, that he complained to both Cameron and PMG about the alleged harassment and

its progression, and that, after he was shot at by Carrington and Perez, Cameron and PMG fired Olmeda -- provide sufficient factual matter, accepted as true, to state plausible claims for harassment in the workplace and retaliation. The Court agrees.

*A.*

Given that the plaintiff clarifies (or abandons) certain claims by way of his opposition papers, it is necessary to streamline which theories of liability are alleged against PMG.[6] Olmeda concedes that his "Fourth and Sixth Causes of Action are inapplicable to Defendant PMG"; thus, the Court grants PMG's motion to dismiss insofar as it seeks dismissal of Olmeda's Fourth and Sixth Causes of Action (for assault, battery, intentional infliction of emotional distress and vicarious or strict liability). Olmeda also contends that he "is not pursuing PMG under a common enterprise theory, but rather as Olmeda's direct employer." Thus, any theory of liability premised upon a "common enterprise" theory must likewise be dismissed.

*B.*

Olmeda premises PMG's alleged liability on its role as one of his employers; thus, the Court turns to address whether Olmeda has stated a plausible claim for retaliation and for unlawful employment discrimination or harassment in the workplace under

---

[6]Olmeda's "causes of action" are inartfully drafted, to say the least.

7

Title VII.[7]  PMG does not challenge on technical sufficiency grounds Olmeda's allegations that he was subject to racial (or national origin) discrimination or harassment; that Cameron and PMG failed to implement any workplace anti-harassment policy; or that he was fired by Cameron and PMG after complaining about the alleged discrimination or harassment.  Rather, PMG ostensibly submits only that Olmeda has failed to allege that PMG had the ability to supervise or to otherwise control Cameron's employees, and that this is fatal to Olmeda's ability to state a claim for harassment or retaliation.[8]  Based on the facts as alleged, however, PMG fails to carry its burden to show that no plausible claim for workplace discrimination or retaliation has been alleged against it.

Insofar as it is unclear from the allegations in the complaint whether PMG or Cameron (or both) employed Olmeda, PMG fails to persuade that this ambiguity alone condemns Olmeda's employment retaliation claim against PMG.  PMG does not dispute that it is an "employer" within the meaning of Title VII. Nor could it; consider 42 U.S.C. § 2000e-3(a):

---

[7] The Cout notes that PMG's alleged lack of anti-discrimination or retaliation policy is a component of his Title VII claims, not a separate claim for relief as Olmeda entitles it (his "Third Cause of Action").  And, Olmeda's "Fifth Cause of Action" is not a substantive cause of action but, rather, a description of damages that he submits are recoverable.  The Court is not bound by the plaintiff's conclusory labels.

[8] PMG also contends that Olmeda advances contradictory allegations concerning who had control over Olmeda and his working conditions.

> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.[9]

Moreover, PMG neither disputes that Olmeda alleges that it (PMG) is an employer, nor invokes authority that might dilute this statutory provision, which plainly provides, as the case literature interprets, that "[n]o employer may retaliate against someone who makes or supports a charge of discrimination against any employer." See Flowers v. Columbia College Chicago, 397 F.3d 532, 534 (7th Cir. 2005)(noting that "identifying the 'employer' in a borrowed-servant situation can be difficult" and "[p]erhaps *both* entities usefully could be deemed employers in such a situation")(emphasis in original, citations omitted). Olmeda pleads as much.

Olmeda alleges that he was employed by both Cameron and PMG,

---

[9] As the Supreme Court has observed, Title VII defines an employee "in a completely circular [fashion]," as "an individual employed by an employer." Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992)(citing 42 U.S.C. § 2000e(f)); see also Juino v. Livinston Parish Fire District No. 5, 717 F.3d 431, 434 (5th Cir. 2013)(noting that Darden instructs that common law agency principles apply when Congress uses employment terms without defining them).

that he complained to both Cameron and PMG that he was being harassed and that his life was being threatened at work, that neither company investigated his complaints, and that, ultimately, he was fired after he complained that Carrington and Perez had shot at him after he drove away from Cameron's facility.[10]  Short, plain statements, if proved, suggesting entitlement to relief on his retaliation claim against PMG.[11]

Accordingly, PMG's motion to dismiss is GRANTED in part (insofar as Olmeda's state law claims for assault, battery, and intentional infliction of emotional distress, and any other "cause of action" that fails to constitute a substantive claim are hereby dismissed as to PMG) and the motion is DENIED in part (insofar as

---

[10] Olmeda suggests in his opposition papers that PMG signed his paycheck; although this fact may be meaningful in resolving, at some future stage in this litigation, any factual controversy concerning Olmeda's employment status, cf. Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992), the Court notes that this "fact" does not appear in the complaint, nor would it be dispositive of the defendant's motion.

[11] PMG does not single out for dismissal Olmeda's workplace harassment and retaliation claims; it focuses on the common enterprise theory abandoned by the plaintiff in his opposition papers.  Nevertheless, the ambiguity respecting employment status likewise favors the plaintiff on his workplace harassment claim.  PMG does not dispute that Olmeda's factual allegations would satisfy his prima facie case and otherwise meet the severe or pervasive test applicable to workplace harassment.  Instead, PMG argues that it did not have control over Cameron's employees -- the alleged harassers, Carrington and Perez.  But PMG's role concerning Olmeda's employment is a classic fact dispute; if it is shown that Cameron had complete control over Olmeda's working environment, then perhaps PMG will be entitled to judgment as a matter of law at a future stage of these proceedings.

Olmeda has stated sufficient facts to support plausible claims for workplace harassment and retaliation).

        New Orleans, Louisiana, November 5, 2014

        _____
          MARTIN L. C. FELDMAN
        UNITED STATES DISTRICT JUDGE